*932 OPINION.
Smith :
1. The petitioner complains, first, that the respondent has erroneously held that the whole of the amount received by it on certain contracts with the Emergency Fleet Corporation during the years 1918, 1919, and 1920 was income taxable in 1920.
In its brief the petitioner contends as follows:
(a) When a government contract is cancelled and, by agreement between the parties, the contractor is paid his actual cost plus a percentage for profit, loss advances already made, in place of a fixed sum payable by installments as the work progressed, the instalments earned and actually paid in previous years while the contract was in force are not gross income of the year in which (he final settlement is made.
* * * * ⅜ * *
(b) When a government contract is cancelled and an agreement is entered into with respect to the compensation which the contractor is to receive, based on the actual cost incurred by him up to the date of cancellation, and all that remains to be done is an audit by a government agency of the cost of the work already performed by the contractor as shown by his books, the income arising from the agreement, in thé case of a taxpayer keeping his books and making returns upon the accrual basis, is not income in the year in which the audit is completed and the balance paid, if the work was done and the settlement was agreed upon in a previous year.
The respondent defends his computation of taxable net income for 1920 and his action in allocating to that year an alleged profit upon the completion of the contracts by citing articlé 51, Regulations 62, in which it is provided:
* * * Such items as claims for compensation under canceled Government contracts constitute income for the year in which they are allowed or their value is otherwise definitely determined.
In his brief the respondent submits that it is immaterial, so far as the present petitioner is concerned, whether the income from the contracts be allocated to the year 1919 or to the year 1920, for if such income were allocated to 1919, it would serve only to reduce but not to wipe out the net loss for that year, so that in any event the taxable net income of 1920 would not be affected. It is not clear, however, that this is so, for under the regulations of the Commissioner the amortization allowance is to be spread over the amortization period in accordance with the net income assignable to the taxable periods contained therein. See art. 185, Regulations 45.
*933 In United States v. Anderson, 269 U. S. 422, tbe principle was laid down that where a taxpayer makes his tax return upon the accrual basis and all the events have occurred in the taxable year “ which fixed the amount of the [munitions] tax and determined the liability of the taxpayer to pay it,” the tax accrued within the year within the meaning of sections 12 (a) and 13 (d) of the Revenue Act of 1916. The same principle was applied by the Supreme Court in United States v. American Can Co., 280 U. S. 412; Lucas v. American Code Co., 280 U. S. 445; Niles Bement Pond Co. v. United States, 281 U. S. 357; Aluminium Castings Co. v. Routzahn, 282 U. S. 92; Fawcus Machine Co. v. United States, 282 U. S. 375. The Board has also held in numerous cases that the accrual of items of income or of expense is dependent upon whether events have occurred which fix the amount to be received or which fix the liability to pay. Peninsula Shipbuilding Co., 9 B. T. A. 189; Kentucky & Indiana Terminal Railroad Co., 19 B. T. A. 969; American Cigar Co., 21 B. T. A. 464; Brooklyn Union Gas Co., 22 B. T. A. 507.
The contracts which the petitioner had with the Fleet Corporation were fully completed in 1919. ’ The petitioner and the Fleet Corporation had entered into a final agreement in 1919 as to the compensation which the petitioner was to receive under its contracts. All that remained to be done at the close of 1919 was the making of an audit by the representatives of the Fleet Corporation of the petitioner’s books of account for the purpose of determining the cost to the petitioner of the construction of the vessels.
We are of the opinion that the contention of the respondent that all of the income from these contracts was income of 1920 is not sustained by article 51 of Regulations 62, above quoted; for the compensation to be received by this petitioner was fixed by the agreement of October 28, 1919, and the contracts were fully performed within that year. It is furthermore to be noted that the petitioner’s books of account, kept upon the accrual basis, show the income from the contracts as income of the years in which the monies were received from the Fleet Corporation, and not all as income of 1920, in which a small balance due the petitioner was paid. The contentions of the petitioner upon this point are sustained.
2. The amortization issue raised by the petition presents two questions — first, the amount to be amortized, and, second, the allocation or spread of that amount over the amortization period. It is stipulated that the cost of the amortizable facilities was $456,566.62; that the amortization period ended September 30, 1919; and that the facilities on that date had a residual value of $100,341.77. Under the agreement of October 28, 1919, the petitioner was awarded $120,000, which it concedes represents contractual amortization and *934 therefore reduces the amount to be amortized to $236,224.85. The petitioner contends that this is the amount of the amortization to be spread over the amortization period and the respondent admits that this would be the case were it not for the fact that under the contract of July 13, 1922, $155,000 of the indebtedness of the petitioner to the Fleet Corporation was canceled. The respondent contends therefore that the only cost of the amortizable facilities borne by the petitioner was $81,224.85, or the difference between $236,224.85 and $155,000.
Section 234 (a) (8) of the Revenue Act of 1918 is as follows:
In the case of buildings, machinery, equipment, or other facilities, constructed, erected, installed, or acquired, on or after April 6, 1917, for the production of articles contributing to the prosecution of the present war, and in the case of vessels constructed or acquired on or after such date for the transportation of articles or men contributing to the prosecution of the present war, there shall be allowed a reasonable deduction for the amortization of such part of the cost of such facilities or vessels as has been borne by the taxpayer, but not again including any amount otherwise allowed under this title or previous Acts of Congress as a deduction in computing net income. At any time within three years after the termination of the present war the Commissioner may, and at the request of the taxpayer shall, reexamine the return, and if he then finds as a result of an appraisal or from other evidence that the deduction originally allowed was incorrect, the taxes imposed by this title and by Title III for the year or years affected shall be redetermined and the amount of tax due upon such redetermination, if any, shall be paid upon notice and demand by the collector, or the amount of tax overpaid, if any, shall be credited or refunded to the taxpayer in accordance with the provisions of section 252.
The same section of the Revenue Act of 1921 provides in part as follows:
* * * At any time before March 3, 1924, the Commissioner may, and at the request of the taxpayer shall, reexamine the return, and if he then finds as a result of an appraisal or from other evidence that the deduction originally allowed was incorrect, the income, war-profits, and excess-profits taxes for the year or years affected shall be redetermined * * *
Under the above quoted provisions of the taxing acts there can be no question but that the respondent had the right to redetermine the amount of the amortization allowance in the case of this petitioner. In 1922, it was apparent that $155,000 of the cost of war facilities, advanced by the Fleet Corporation and secured by these mortgages, was borne by the Government, which amount was in addition to any amounts borne by the Government under the settlement of October 28, 1919. The respondent has computed the amortization allowance to be $81,224.85. We discover no error in such computation. The fact that the $155,000 cost of war facilities in question was allowed by the Government in settlement of a claim which the Government could not collect in 1922 by reason of the financial standing of the petitioner is not material. The facts are, in the final analysis, that *935 the Government bore the cost of such facilities. In our opinion the decision of the Circuit Court of Appeals for the First Circuit in Tower Co. v. Commissioner, 38 Fed. (2d) 618, supports this proposition. In that case it was held that, in so far as one contracting with the Government under claim for damages by reason of cancellation of a war contract received compensation for obsolescence with respect to its war facilities, to that extent it has not, within the meaning of section 234 (a) (8) of the Revenue Act of 1918, borne the cost of such facilities. It is, therefore, held that the amount of the war facilities to be amortized is the amount determined by the respondent, namely, $81,224.85.
The second question presented with respect to amortization is the allocation or spread of that amount over the amortization period. Article 185 of Regulations 45 requires the amount to be spread in accordance with the net income of the taxable periods comprehended by the amortization period. This regulation has been approved by the Board. G. M. Standifer Construction Corporation, 4 B. T. A. 525; John Polachek, 3 B. T. A. 1051; Williams Harvey Corporation, 16 B. T. A. 752.
It is manifest that the method of allocating the amortization allowance used by the respondent in this case, namely, according to the sales reported by the petitioner’s tax returns for 1918 and 1919, is not in accordance with the Commissioner’s regulations. Furthermore, it is apparent that the income from the Government contracts has not been determined upon the accrual basis; for all of the income from all of the contracts has been allocated to the year 1920. With the correction indicated- in this opinion the amortization allowance should be allocated in accordance with the net income, and deficiencies, if any, determined accordingly.
The final point for decision is whether the petitioner should be allowed to deduct from its gross income of 1920 the cost of its plate and angle shop which it completed in that year and which it claims had lost its .useful value in 1920. The evidence indicates that this shop was started in 1919 and completed sometime in 1920. The petitioner built the plant in the hope that it might obtain contracts for the repair of steel vessels. It was induced to build the plant by statements made by one or more officials of the Fleet Corporation. It obtained no contract for the repair of steel vessels in 1920 and has never made any use of the plate and angle shop. The petitioner had hopes for two or three years that the Fleet Corporation would give it contracts which would enable it to utilize the shop, but after there had been a change of personnel of the Fleet Corporation the petitioner became convinced that it would never be able to utilize the shop which had been built. So far as the evidence shows, the *936 plant was not obsolete in 1920 for the doing of the work for which it was constructed, nor was it any less valuable for that purpose at the close of 1920 than it was at the date of construction. Upon the record the claim of the petitioner to a deduction for the loss of useful value of the plate and angle shop is not sustained. Cf. United States Cartridge Co. v. United States, 48 Fed. (2d) 983.
Eeviewed by the Board.

Judgment will he entered wider Bule 50.